IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD CARLSON, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER DOOR & CABINET INC., a Washington for-profit corporation,<br><br>Defendant. | Case No. ______________<br><br>ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Richard Carlson (Carlson) brings this class and collective action to recover unpaid wages and other damages from Frontier Door & Cabinet Inc. (Frontier).

2. Frontier employed Carlson as one of its Hourly Employees (defined below).

3. Frontier pays Carlson and the other Hourly Employees on an hourly basis.

4. Carlson and the other Hourly Employees regularly work more than 40 hours a workweek.

5. But Frontier does not pay them for all their hours worked.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

6. Instead, Frontier deducts 30 minutes a day from Carlson's and its other Hourly Employees' recorded hours for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (Frontier's "auto-deduct policy").

7. Thus, Frontier does not pay Carlson and the other Hourly Employees for that time.

8. But Carlson and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9. Instead, Frontier requires Carlson and its other Hourly Employees to remain on duty and perform compensable work throughout their shifts and Frontier regularly subjects them to work interruptions during unpaid "meal breaks."

10. Frontier's auto-deduct policy violates the Fair Labor Standards Act (FLSA) and Washington Minimum Wage Act (WMWA) by depriving Carlson and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay for overtime hours worked.

11. Frontier likewise does not provide Carlson and the other Hourly Employees with *bona fide* rest periods of at least 10 minutes for every four hours worked or major fraction thereof (Frontier's "rest period policy").

12. Instead, Frontier requires Lehman and other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "rest periods."

13. Frontier's failure to provide Carlson and other Hourly Employees in Washington with *bona fide* meal breaks and rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor and Industries (L&I) regulations.

14. Likewise, as a result of its auto-deduct policy and rest period policy, Frontier willfully withholds earned wages from Carlson and the other Hourly Employees in violation of the Washington Wage Rebate Act (WWRA).

## JURISDICTION & VENUE

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

16. This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over Frontier because Frontier is a Washington corporation.

18. Venue is proper because Frontier maintains its principal place of business in Tacoma, Washington, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

19. Frontier employed Carlson as a drawer laborer from approximately July 2021 until March 2024.

20. Throughout his employment, Frontier classified Carlson as non-exempt and paid him by the hour.

21. And Frontier subjected Carlson to its auto-deduct policy and rest period policy.

22. Carlson's written consent is attached as Exhibit 1.

23. Carlson brings this class and collective action on behalf of himself and similarly situated Frontier employees.

24. The putative FLSA collective of similarly situated employees is defined as:

> All hourly employees who worked under Frontier's auto-deduct policy during the last 3 years through final resolution of this action (the "FLSA Collective Members").

25. Carlson also seeks to represent a class under Washington law pursuant to FED. R. CIV. P. 23.

26. The Washington Class of similarly situated employees is defined as:

> All hourly employees in Washington who worked under Frontier's auto-deduct policy and/or rest period policy during the last 3 years through final resolution of this action (the "Washington Class Members").

27. The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

28. Frontier is a Washington corporation headquartered in Tacoma, Washington.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

29. Frontier may be served through its registered agent: Eugene Kettler, 11721 Steele Street South, Tacoma, Washington, 98444, or wherever he may be found.

## FLSA COVERAGE

30. At all relevant times, Frontier was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, Frontier was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, Frontier was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33. At all relevant times, Frontier has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34. At all relevant times, Carlson and the other Hourly Employees were Frontier's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

36. Frontier touts itself as "a premier provider of interior and exterior door products and high-quality cabinets for the commercial construction industry."[1]

37. To meet its business objectives, Frontier hires employees, like Carlson and the other Hourly Employees.

38. Frontier classifies Carlson and the other Hourly Employees as non-exempt and pays them by the hour.

---

[1] https://frontierdoor.com/ (last visited March 14, 2026).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

39. While job duties and locations may differ, Carlson and the other Hourly Employees are all subject to Frontier's same or similar policies—its auto-deduct policy and/or rest period policy—for similar work.

40. For example, Frontier employed Carlson as a drawer laborer in its Tacoma, Washington production and distribution facility from approximately July 2021 until March 2024.

41. Carlson's job duties included operating equipment, such as a bander, to cut wood in order to fabricate and assemble drawers.

42. Frontier paid Carlson approximately $22 an hour.

43. Carlson reported his "on the clock" hours to Frontier through its timekeeping system.

44. Frontier's records reflect the hours Carlson worked each week "on the clock."

45. Throughout his employment, Carlson typically worked 8 to 12 hours a day for 5 days a week (40 to 60 hours a workweek) "on the clock."

46. Likewise, the other Hourly Employees typically work 8 to 12 hours a day for 5 days a week (40 to 60 hours a workweek) "on the clock."

47. And each pay period, Frontier pays Carlson and the other Hourly Employees based on common systems and methods it selects and controls.

48. Frontier requires Carlson and its other Hourly Employees to abide by common work, time, pay, meal period, rest period, and overtime policies and procedures.

49. But Frontier does not pay Carlson and the other Hourly Employees for all their hours worked, including overtime hours.

50. Instead, Frontier subjects Carlson and the other Hourly Employees to its auto-deduct policy, requiring them to work "off the clock" during so called "meal periods."

51. Specifically, Frontier automatically deducts 30 minutes a day from its other Hourly Employees' for so called "meal breaks."

52. Frontier automatically deducts this time regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

53. Frontier simply assumes Carlson and its other Hourly Employees receive *bona fide* meal breaks each shift they work.

54. But, like Carlson, the other Hourly Employees do not actually receive *bona fide* meal breaks.

55. Instead, like Carlson, Frontier requires the other Hourly Employees remain on duty and performing compensable work throughout their shifts, including during unpaid "meal breaks."

56. And, like Carlson, Frontier subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

57. These work interruptions prevent the Hourly Employees from engaging in personal activities during unpaid "meal breaks."

58. In other words, Carlson and the other Hourly Employees are not relieved of all work duties during their unpaid "meal breaks."

59. And like Carlson, Frontier failed to provide the other Hourly Employees with a second uninterrupted, 30-minute meal break when they worked more than 11 hours in a day.

60. Rather, during their unpaid "meal breaks," Carlson and the other Hourly Employees are forced to remain on duty and perform their regular job duties.

61. Thus, Carlson and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Frontier's—not their own—predominant benefit.

62. This unpaid time is compensable under the FLSA and Washington law because Frontier knew or should have known: (1) Carlson and its other Hourly Employees were performing unpaid work during "meal breaks"; (2) they were interrupted with work duties during attempted "meal breaks"; (3) they were not completely relieved of all work duties during unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands; (5) their unpaid "meal breaks" were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal breaks" because of work interruptions; (7) they remained on Frontier's (or its client's) premises or under its supervision; and/or (8) they spent their unpaid "meal breaks" performing their regular job duties for Frontier's predominant benefit.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

63. Frontier fails to exercise its duty as Carlson's and the other Hourly Employees' employer to ensure these employees are not performing work that Frontier does not want performed during their unpaid "meal breaks."

64. And Frontier knows Carlson and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks" because it expects and requires them to do so.

65. Carlson and other Hourly Employees have complained to Frontier's management and human resources about being forced to work during their unpaid "meal periods."

66. Despite accepting the benefits, Frontier does not pay Carlson and the other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

67. Thus, Frontier required, requested, suffered, or permitted Carlson and the other Hourly Employees to work during their unpaid "meal breaks."

68. Despite accepting the benefits, Frontier does not pay Carlson and the other Hourly Employees for the compensable work they perform "off the clock."

69. Thus, Frontier fails to pay Carlson and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

70. Additionally, as with Carlson, Frontier fails to provide other Hourly Employees in Washington with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof.

71. Instead, Frontier requires them to work throughout their shifts, including during any so called "rest periods" and/or subjects them to work interruptions during attempted rest periods.

72. Under its auto-deduct policy and rest period policy, Frontier fails to pay and withholds earned wages from Carlson and the other Hourly Employees in violation of the WIWA and related L&I regulations, in addition to violating the FLSA, WMWA, and WWRA.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

## Class & Collective Action Allegations

73. Like Carlson, the other Hourly Employees are victimized by Frontier's auto-deduct policy and/or rest period policy.

74. Other Hourly Employees worked with Carlson and indicated they were paid in the same manner, performed similar work, and were subject to Frontier's auto-deduct policy and/or rest period policy.

75. Based on his experience, Carlson is aware Frontier's auto-deduct policy and rest period policy were imposed on other Hourly Employees.

76. The putative class of Hourly Employees includes more than 40 members.

77. Thus, the putative class of Hourly Employees is so numerous that joinder of all class members in one lawsuit is not practicable.

78. The Hourly Employees are similarly situated in the most relevant respects.

79. Even if their job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages, overtime wages, and *bona fide* meal and rest periods.

80. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

81. Rather, Frontier's auto-deduct policy and rest period policy render Carlson and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, overtime wages, and *bona fide* meal and rest periods.

82. Frontier's records reflect the number of hours the Hourly Employees worked each week "on the clock."

83. Frontier's records further reflect it automatically deducted 30 minutes a day for so-called "meal periods."

84. The back wages owed to Carlson and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

85. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Frontier's records, and there is no detraction from the common nucleus of liability facts.

86. Therefore, the issue of damages does not preclude class or collective treatment.

87. Carlson's experiences are therefore typical of the experiences of the other Hourly Employees.

88. Carlson has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

89. Carlson has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Washington law.

90. Carlson and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

91. Carlson retained counsel with significant experience in litigating complex class and collective actions.

92. A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

93. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Frontier will reap the unjust benefits of violating the FLSA and Washington law.

94. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

95. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Frontier.

96. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

97. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

98. Among the common questions of law and fact are:

(a) Whether Frontier engaged in a policy and practice of automatically deducting 30 minutes a day to for a "meal period," regardless of whether the Hourly Employees received a *bona fide* meal period;

(b) Whether Frontier knew, or had reason to know, it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock";

(c) Whether Frontier failed to provide its Hourly Employees with *bona fide* meal and rest periods in violation of the WIWA and related Washington L&I regulations;

(d) Whether Frontier failed to pay the Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 40;

(e) Whether Frontier willfully withheld earned wages from its Hourly Employees in violation of the WWRA;

(f) Whether Frontier's decision not to pay its Hourly Employees overtime wages at the required rate for all overtime hours worked was made in good faith;

(g) Whether Frontier's decision to withhold earned wages from its Hourly Employees was made in good faith; and

(h) Whether Frontier's violations were willful.

99. There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

100. The similarly situated Hourly Employees are known to Frontier, are readily identifiable, and can be located through Frontier's business and personnel records.

## FRONTIER'S VIOLATIONS WERE WILLFUL

101. Frontier knew it was subject to the FLSA's and WMWA's overtime provisions.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

102. Frontier knew the FLSA and WMWA required it to pay non-exempt employees, including the Hourly Employees, overtime of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

103. Frontier knew it was subject to the WWRA.

104. Frontier knew the WWRA prohibited it from willfully withholding earned wages from employees, including the Hourly Employees.

105. Frontier knew each Hourly Employee worked more than 40 hours in at least one workweek during relevant period(s).

106. Frontier knew it paid its Hourly Employees by the hour.

107. Frontier knew its Hourly Employees were non-exempt employees entitled to overtime wages.

108. Frontier knew it did not pay its Hourly Employees for all compensable hours worked, including overtime hours.

109. Thus, Frontier knew it required, requested, suffered, or permitted the Hourly Employees to work "off the clock."

110. Frontier knew it was subject to the WIWA and L&I regulations.

111. Frontier knew the WIWA and the L&I regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free 10-minute rest period for every 4 hours worked or major fraction thereof.

112. Frontier knew the WIWA and L&I regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

113. Frontier knew its Hourly Employees did not waive their meal periods.

114. Nonetheless, Frontier failed to provide its Hourly Employees with *bona fide*, duty-free meal and rest periods that complied with Washington law.

115. Frontier knew the FLSA and Washington law required it to pay its employees, including the Hourly Employees, for all hours they performed compensable work.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

116. Frontier knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" without compensation.

117. Frontier knew it automatically deducted 30 minutes from the Hourly Employees each workday for so called "meal periods."

118. Frontier knew its Hourly Employees did not actually receive *bona fide* meal periods.

119. Frontier knew its Hourly Employees regularly worked "off the clock" during their unpaid "meal periods."

120. Frontier knew its Hourly Employees regularly spent their unpaid "meal periods" performing their regular job duties "off the clock" for Frontier's predominant benefit.

121. Thus, Frontier knew it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock" during their so-called "meal periods."

122. Frontier knew, should have known, or recklessly disregarded whether its Hourly Employees performed compensable work "off the clock."

123. Frontier knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Washington law.

124. Indeed, Carlson and the Hourly Employees complained to Frontier supervisors, management and/or HR about being forced to work "off the clock" and missed meal and rest periods.

125. Frontier knowingly, willfully, and/or in reckless disregard of applicable federal and Washington law carried out employment policies that systematically deprived its Hourly Employees of *bona fide* meal and rest periods, earned wages, and premium overtime wages at the required rates for overtime hours worked.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

126. Carlson brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

127. Frontier violated, and is violating, the FLSA by employing non-exempt employees (the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all their hours worked in excess of 40 a workweek, including those worked "off the clock."

128. Frontier's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

129. Accordingly, Frontier owes the FLSA Collective Members the difference between the wages actually paid and the overtime wages earned.

130. Because Frontier knew, or showed reckless disregard for whether, its auto-deduct policy violated the FLSA, Frontier owes these wages for at least the past 3 years.

131. Frontier is also liable to the FLSA Collective Members for an additional amount equal to all their unpaid wages as liquidated damages.

132. Finally, the FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## Count II
## Failure to Pay Overtime Under the WMWA
## (Washington Class)

133. Carlson brings his WMWA claim as a class action on behalf of himself and the other Washington Class Members pursuant to Fed. R. Civ. P. 23.

134. Frontier conduct violates the WMWA. RCW 49.46, *et seq*.

135. At all relevant times, Frontier was subject to the WMWA because Frontier was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

136. At all relevant times, Frontier employed the Washington Class Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

137. The WMWA requires employers, like Frontier, to pay non-exempt employees, including the Washington Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.

138. The Washington Class Members are entitled to overtime pay under the WMWA.

139. Frontier violated, and is violating, the WMWA by failing to pay non-exempt employees (the Washington Class Members) overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock." *See* RCW 49.46.130; *see also* RCW 49.46.090.

140. Frontier's unlawful conduct harmed the Washington Class Members by depriving them of the overtime wages they are owed under Washington law.

141. Accordingly, Frontier owes the Washington Class Members the difference between the wages paid and the overtime wages actually earned (RCW 49.46.090) plus pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

142. Finally, the Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## COUNT III
## WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
## (WASHINGTON CLASS)

143. Carlson brings his WWRA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

144. Frontier conduct violates the WWRA (RCW 49.52, *et seq.*).

145. At all relevant times, Frontier was subject to the WWRA because Frontier was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

146. At all relevant times, Frontier employed the Washington Class Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

147. The WWRA prohibits employers, like Frontier, from depriving employees, including the Washington Class Members, of "any part of his or her wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

148. Frontier violated, and is violating, the WWRA by willfully withholding earned wages from the Washington Class Members for the hours they worked during their on-duty "meal periods," which Frontier was obligated to pay under Washington law (*e.g.*, the WMWA). *See* RCW 49.52.050.

149. Frontier also violated, and is violating, the WWRA by willfully withholding earned overtime wages from the Washington Class Members, which federal and Washington law (*i.e.*, the FLSA and the WMWA) obligated Frontier to pay at rates of at least 1.5 times their regular rates of pay. *See* RCW 49.52.050.

150. Frontier's unlawful conduct harmed the Washington Class Members by willfully withholding earned wages (including earned overtime wages at the proper premium rate) from these employees, which they are owed under Washington law.

151. Accordingly, Frontier owes the Washington Class Members their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages. RCW 49.52.070.

152. Finally, the Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

## COUNT IV
## FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA
## (WASHINGTON CLASS)

153. Carlson brings his meal and rest period claims under the WIWA and related Washington L&I regulations as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

154. Frontier's conduct violates the WIWA's (and the related L&I regulations') meal and rest period requirements. *See* RW 49.12, *et seq.*; WAC 296-126-092.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

155. At all relevant times, Frontier was subject to the WIWA and related L&I regulations because Frontier was (and is) an "employer" within the meaning of the WIWA and the L&I regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

156. At all relevant times, Frontier employed the Washington Class Members as covered "employees" within the meaning of the WIWA and the Washington L&I regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

157. The WIWA prohibits employers, like Frontier, from employing employees, including the Washington Class Members, under conditions of labor detrimental to their health. RCW 49.12.020.

158. The L&I regulations require employers, like Frontier, to provide employees, including the Washington Class Members, meal periods of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift, as well as a second meal for shifts exceeding 11 hours. WAC 296-126-092(1-2).

159. The L&I regulations further mandate that meal periods shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092(1).

160. The L&I regulations also require employers, like Frontier, to provide employees, including the Washington Class Members, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

161. The L&I regulations further prohibit employers, like Frontier, from requiring employees, including the Washington Class Members, to work more than 3 hours without a rest period. WAC 296-126-092(4).

162. Washington law also requires employers, like Frontier, to compensate employees, including Carlson and the other Washington Class Members for missed meal and rest periods. *See, e.g.*, *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418 (2024), *review denied*, 4 Wn. 3d 1007 (2025); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn. 2d 507 (2018); *Pellino v. Brinks Inc.*, 164 Wn. App. 668 (2011).



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

163. Throughout the relevant period, Frontier expected and required the Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during their meal and rest periods.

164. The Washington Class Members were not relieved of all duties during attempted meal and rest periods but instead were subjected to work interruptions.

165. Thus, Frontier violated, and is violating, the WIWA and related L&I regulations by failing to provide the Washington Class Members *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

166. Frontier's unlawful conduct harmed the Washington Class Members by depriving them of the *bona fide* meal and rest periods they are owed under Washington law.

167. Accordingly, the Washington Class Members are entitled to recover their unpaid wages for their missed meal and rest periods, penalty wages, and pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

168. Finally, the Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.12.150.

## RELIEF SOUGHT

WHEREFORE, Carlson, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b) An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

(c) An Order appointing Carlson and his counsel to represent the interests of the Hourly Employees;

(d) An Order finding Frontier liable to Carlson and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

damages in an amount equal to their unpaid wages;

(e) An Order finding Frontier liable to Carlson and the other Washington Class Members for failing to provide them with *bona fide* meal and rest periods plus all available statutory penalties;

(f) An Order finding Frontier liable to Carlson and the other Washington Class Members for all unpaid wages owed under the WMWA;

(g) An Order finding Frontier liable to Carlson and the other Washington Class Members for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

(h) An Order awarding attorney's fees, costs, and expenses;

(i) A Judgment against Frontier awarding the Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

(j) An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(k) All such other and further relief as may be necessary and appropriate.



JOSEPHSON DUNLAP, LLP
5847 San Felipe St., Suite 2400
Houston, Texas 77057
(713) 352-1100

Date: April 8, 2026

Respectfully submitted,

FRANK FREED SUBIT & THOMAS, LLP

By: */s/ Michael Subit*
Michael C. Subit, WSBA #29189
msubit@frankfreed.com
705 Second Ave., Suite 1200
Seattle, Washington 98104
Telephone: 206.682.6711

JOSEPHSON DUNLAP, LLP

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Telephone: 713.352.1100

BRUCKNER BURCH, PLLC

Richard J. (Rex) Burch*
rburch@brucknerburch.com
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Telephone: 713.877.8788

**Pro Hac Vice Applications Forthcoming*

ATTORNEYS FOR CARLSON
& THE HOURLY EMPLOYEES